*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BELLSOUTH TELECOMMUNICATIONS, INC.,
                              *Plaintiff-Appellant,*

                    *v.*

UNIVERSAL TELECOM, INC.; PUBLIC SERVICE
COMMISSION OF KENTUCKY; MARK DAVID GOSS,
Chairman of the Public Service Commission of
Kentucky; TERESA J. HILL, Vice-Chairman of the
Public Service Commission of Kentucky; W.
GREGORY COKER, Commissioner for the Public
Service Commission of Kentucky,
                              *Defendants-Appellees.*

No. 05-5674

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 04-00035—Joseph M. Hood, Chief District Judge.

Argued:  June 1, 2006

Decided and Filed:  July 21, 2006

Before:  BOGGS, Chief Judge; KEITH and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Mark R. Overstreet, STITES & HARBISON, Frankfort, Kentucky, for Appellant.
Holly C. Wallace, DINSMORE & SHOHL, Louisville, Kentucky, John E.B. Pinney, PUBLIC
SERVICE COMMISSION OF KENTUCKY, Frankfort, Kentucky, for Appellees.  **ON BRIEF:**
Mark R. Overstreet, STITES & HARBISON, Frankfort, Kentucky, Dorothy J. Chambers,
BELLSOUTH TELECOMMUNICATIONS, INC., Louisville, Kentucky, for Appellant.  Holly C.
Wallace, John E. Selent, DINSMORE & SHOHL, Louisville, Kentucky, John E.B. Pinney, Amy E.
Dougherty, PUBLIC SERVICE COMMISSION OF KENTUCKY, Frankfort, Kentucky, for
Appellees.

1

---

**OPINION**

---

SUTTON, Circuit Judge.  BellSouth Telecommunications challenges the district court's affirmance of an order of the Kentucky Public Service Commission allowing Universal Telecom to adopt an existing interconnection agreement between BellSouth and MCI.  *See* 47 U.S.C. § 252(i).  Finding no error by the Commission, we affirm.

I.

In enacting the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. § 151 *et seq.*), Congress sought to enhance competition in the telecommunications industry.  To that end, the Act requires incumbent providers of local phone service to offer "interconnection" services—to share their network, in other words—with other telecommunications companies, 47 U.S.C. § 251(a)(1), and provides three mechanisms for doing so:  The incumbent and the competitor may negotiate the terms of an interconnection agreement, § 252(a); they may go through arbitration to establish the terms of an interconnection agreement, § 252(b); or a carrier may adopt an existing interconnection agreement between the incumbent and another telecommunications company, § 252(i).  Once the parties have reached an agreement via one of these paths, the Act "entrusts state commissions with the job of approving interconnection agreements." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 385 (1999); *see* 47 U.S.C. § 252(e)(1).

At issue here is the adoption provision, § 252(i), which permits an entrant to a local telephone market (like Universal) to forgo negotiation or arbitration with an incumbent (like BellSouth) by adopting a previously negotiated or arbitrated interconnection agreement between the incumbent and another carrier, *see id.* ("A local exchange carrier shall make available any interconnection, service, or network element provided under an agreement approved under this section to which it is a party to any other requesting telecommunications carrier upon the same terms and conditions as those provided in the agreement.").

The right to adopt an existing interconnection agreement contains several limitations, one of which is time.  Under a regulation promulgated by the Federal Communications Commission (FCC), an entrant seeking to adopt an approved agreement must do so within "a reasonable period of time after the approved agreement is available for public inspection," 47 C.F.R. § 51.809(c), which is to say a reasonable time after the state commission has approved the underlying agreement, 47 U.S.C. § 252(e)(1), (h).

On July 29, 2002, BellSouth and MCI completed the negotiation of an interconnection agreement, and on August 28, 2002, the Kentucky Public Service Commission approved the agreement.  On March 12, 2004, and again on April 12, Universal communicated with BellSouth that it wished to adopt the MCI agreement.  BellSouth responded on May 3 with roughly 200 pages of changes that the company believed had to be made to the existing agreement in order to bring it into compliance with federal law.  On May 11, apparently disagreeing with BellSouth's position, Universal filed a notice with the Commission conveying its intent to adopt the BellSouth-MCI agreement.  On May 19, the Commission granted Universal's request.

On May 24, BellSouth filed a motion for reconsideration with the Commission.  It noted that intervening FCC orders had invalidated provisions of the MCI agreement and argued that, as a result, the "reasonable period of time" in which Universal could adopt that agreement had expired.  JA 45.  On June 14, the Commission again approved Universal's adoption of the agreement, noting that Universal was "not seeking to adopt" the provisions affected by one of the orders, *id.* at 58, and that the orders in question at any rate did not prohibit adoption of existing agreements.

On July 2, 2004, BellSouth filed a complaint in federal court against Universal, the Commission and the individual commissioners (in their official capacities), challenging the Commission's decision. *See* 47 U.S.C. § 252(e)(6). On March 28, 2005, the district court affirmed the Commission's adoption order. In addressing BellSouth's argument that the reasonable period of time to adopt the MCI agreement had lapsed due to changes in telecommunications law, the court noted that BellSouth "fails to state how and in what regard the [intervening FCC] orders affect the Agreement," D. Ct. Op. at 6, and that "[i]f the law has changed, the adopted BellSouth-MCI Agreement may be modified via the change of law provision located therein," *id*. at 9.

## II.

"We review the Commission's interpretation of the Act de novo" but will uphold its decision approving the adoption of the MCI agreement "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003) (internal quotation marks omitted). Put another way, we will not "reverse the Commission's decision absent a clear error of judgment or the Commission's failure to consider relevant factors or aspects of the problem." *Id*.

The three parties to this appeal share considerable common ground. All agree that § 252(i) required BellSouth to make the MCI interconnection agreement available for adoption. All agree that the FCC required Universal to make that adoption within a reasonable period of time. All agree that the reasonable-period standard is a flexible one. *See* BellSouth Br. at 24 ("[T]he FCC . . . explained the necessity for employing a flexible standard . . . ."). And all agree that intervening changes in federal law made certain provisions of the MCI agreement unadoptable under 47 C.F.R. § 51.809. *See* Comm'n Br. at 8 ("Neither the [Commission] nor Universal Telecom disputes" that "portions of [the] agreement with MCI conflicted with federal law.") (internal quotation marks omitted).

That leaves us with two points of contention—one procedural, one substantive. Procedurally, BellSouth argues that the Commission and the district court failed to consider whether a "reasonable period [of time] had lapsed since the Commission approved the MCI Agreement." BellSouth Br. at 14. Substantively, BellSouth suggests that a reasonable period of time necessarily expires when intervening regulatory developments establish that portions of an interconnection agreement no longer comport with federal law.

The procedural argument lacks merit because the Commission and the district court each addressed BellSouth's objection. Soon after Universal moved the Commission to approve its adoption of the BellSouth-MCI agreement, the Commission did so. After receiving the Commission's order, BellSouth filed a motion for reconsideration arguing that intervening legal changes made the agreement unfit for adoption: "BellSouth has no objection to the Commission allowing Universal Telecom to adopt an agreement after it is conformed to the requirements of the ISP Remand Order and [Triennial Review Order]." JA 47. In its reconsideration order, the Commission characterized BellSouth's argument as being that "the MCI agreement is not appropriate [for adoption] because that agreement does not comply with the [FCC] determinations made in the Triennial Review Order or the ISP compensation order." *Id.* at 58 (footnotes omitted). Then, in response, it reasoned (1) that "Universal Telecom . . . does not provide ISP service and so is not seeking to adopt that particular provision," *id*., and (2) that "the FCC did not indicate in its Triennial Review Order that all existing agreements were no longer valid," which stands in contrast with the ISP order, which affirmatively precluded the adoption of terms affected by the order. *Id.* at 59.

It is true, as BellSouth points out, that the Commission did not describe its ruling in "reasonable time" terms. But the Commission plainly addressed, and rejected, the premises of

BellSouth's "reasonable time" argument. BellSouth had "no objection," it told the Commission, to the adoption of the MCI agreement so long as the agreement was made to "conform[] to the requirements" of two intervening orders. *Id*. at 47. And in response, the Commission, quite understandably, explained why neither regulation precluded adoption of the MCI agreement. BellSouth, in short, cannot claim that the Commission failed to address its argument.

The district court likewise addressed this argument. In its brief to the district court, BellSouth stated that the "issue in this action is whether the reasonable period for adopting an approved interconnection agreement expires when subsequent significant regulatory developments render the agreement, or portions of it, contrary to federal law." *Id*. at 64. Based on this argument, the district court characterized BellSouth's position to be "that the 'reasonable period of time' for adopting a previously approved agreement expires upon subsequent regulatory developments that render the agreement, or portions thereof, contrary to federal law." D. Ct. Op. at 6. The court also noted that "BellSouth's brief . . . fails to state how and in what regard the orders affect the Agreement." *Id*. The court then considered the intervening orders and determined either that they did not apply to Universal's business or that, "[i]f the law has changed, the adopted BellSouth-MCI Agreement may be modified via the change of law provision located therein." *Id*. at 9.

BellSouth's substantive argument fares no better. The question, BellSouth submits, is whether the Commission erred in determining that Universal adopted the MCI agreement within "a reasonable period of time." 47 C.F.R. § 51.809(c). In claiming error, BellSouth initially argues (as it did before the Commission and district court) that two intervening FCC orders—the ISP Remand Order, *see In re Implementation of Local Competition Provisions in the Telecommunications Act of 1996 (Order on Remand)*, 16 F.C.C.R. 9151 (2001), and the Triennial Review Order, *see In the Matter of Review of the § 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 F.C.C.R. 16978 (2003)—show that a reasonable period of time lapsed before Universal sought to adopt the BellSouth-MCI agreement. But in making this contention, BellSouth fails to explain how or why these orders affect the agreement. It does not complain that the costs of providing this agreement to Universal exceed the costs of providing it to MCI, *see* 47 C.F.R. § 51.809(b)(1), and it does not complain that Universal's adoption of the MCI agreement "is not technically feasible," *id*. § 51.809(b)(2).

The ISP order "govern[s] telecommunications traffic bound for Internet service providers [ISPs]," *see In re Core Commc'ns, Inc.*, --- F.3d ----, 2006 WL 1789003, at *1 (D.C. Cir. June 30, 2006), and Universal is not an internet service provider. It thus was in no position to adopt that component of the MCI-BellSouth agreement. To be sure, in issuing the ISP order, the FCC provided "that any 'reasonable period of time' for making available rates applicable to the exchange of [certain] traffic expires upon the Commission's adoption [of] this Order." *ISP Remand Order*, 16 F.C.C.R. at 9189 n.155. Even assuming for the sake of argument that the FCC properly construed § 51.809(c) in issuing this order, it shows only that some orders so change the regulatory landscape that the agency feels compelled to prohibit other carriers from adopting agreements after the order. But the reasonable-period-of-time component of the ISP order does not bear the weight BellSouth places on it because Universal does not offer internet services and thus is not seeking to adopt that portion of the MCI-BellSouth agreement.

More pertinently, the ISP order shows that the FCC well knows how to issue an order providing that a significant change in the regulatory landscape runs out the clock on the "reasonable period of time." Yet it included no such proviso with respect to the other intervening order invoked by BellSouth—the Triennial Review Order. Nor has BellSouth explained what it is about the Triennial Review Order that makes adoption of the BellSouth-MCI agreement infeasible, unduly costly, or otherwise indicative that an unreasonable time for adopting the agreement has run. The company also has failed to explain why the MCI agreement's change-of-law provision does not

solve this problem and indeed acknowledged at oral argument that it has not yet sought relief under this provision.

In addition to arguing that these intervening orders establish that a "reasonable period of time" has run, BellSouth seems to suggest that *any* change in law causes this period to lapse—no matter how soon it occurs after the state agency approves the underlying agreement, no matter how material (or immaterial) the change and no matter whether the adoption agreement contains a change-in-law provision that allows for the parties to account for regulatory changes. As an initial response, it bears emphasizing that the regulation by its terms links the reasonableness of an adoption to the passage of time, not to the passage of new laws. *See* 47 C.F.R. § 51.809(c) ("Individual agreements shall remain available for use by telecommunications carriers pursuant to this section for a *reasonable period of time* after the approved agreement is available for public inspection . . . .") (emphasis added). We have no doubt that intervening changes in the law are one of the reasons for the "reasonable period of time" limitation, and it may well be that the FCC has authority in construing its own regulation to say that certain significant orders necessarily run out the reasonable-period clock. But that hardly proves that any change in law, no matter how soon after approval of the underlying agreement and no matter how irrelevant to that agreement, necessarily establishes that a "reasonable period of time" has run. Were that the FCC's objective, one would not expect the agency to promulgate a regulation using time and time alone as its measure.

Not just the word "time" but the word "reasonable" also undermines BellSouth's categorical argument. The FCC, to our knowledge, has yet to construe "reasonable" period of time under § 51.809(c), but as BellSouth acknowledges elsewhere in its brief, "a flexible standard is implicit in the FCC's use of the term 'reasonable.'" BellSouth Br. at 24. "Reasonable" plainly is a relative term, dependent on context and circumstances, and the FCC's invocation of that term here casts considerable doubt on the contention that a change in law necessarily establishes that a reasonable period of time has lapsed.

In the final analysis, the FCC established a "time" limit of "reasonable" length for carriers to adopt existing interconnection agreements. BellSouth does not complain about the "time" between the approval of the underlying MCI agreement and Universal's adoption of it or about the "reasonable[ness]" of that interval. It instead says that two intervening FCC orders necessarily establish that Universal has exceeded this time limit, even though one order does not apply to Universal's adoption request and even though BellSouth has yet to explain how the other order applies to the agreement or prejudices it. While we do not doubt that the FCC promulgated the time limitation in part to account for intervening changes in law, BellSouth errs in contending that *any* change in law or that these particular changes establish that a "reasonable period of time" has come and gone.

III.

For these reasons, we affirm.